Stephen R. Winship
(Wyoming State Bar No. 5-2093)
WINSHIP & WINSHIP, P.C.
145 South Durbin Street, Suite 201
Casper, WY 82601
(307) 234-8991
steve@winshipandwinship.com

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: ) | |
| ) | |
| TWIFORD ENTERPRISES, INC., ) | Case No. 18-20120 |
| ) | CHAPTER 11 |
| ) | |
| Debtor-in-Possession. ) | |
| ) | |

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION

The Debtor, Twiford Enterprises, Inc. (hereinafter "TEI"), respectfully submits this Plan of Reorganization in good faith and by means not forbidden by law.

## ARTICLE ONE--DEFINITIONS

"*Administrative Expense*" means a claim allowed pursuant to 11 U.S.C. §§503(b) and 507(a)(1).

"*Allowed unsecured claim*" means a claim held by a creditor that:

    (i) has timely filed a claim with the court that has not been objected to or has been allowed by the court following an objection,

    (ii) is listed on the Debtor's bankruptcy schedules and not designated as disputed, contingent, or unliquidated [See 11 U.S.C. §1111(A)];

    (iii) the Court has allowed the claim after resolution of an objection thereto; or

    (iv) has not withdrawn the claim.

*"Bankruptcy Court"* or *"Court"* means the United States Bankruptcy Court for the District of Wyoming.

*"Claim"* shall mean either the Proof of Claim filed by a Creditor or an alleged right to payment or right to an equitable remedy in existence on or as of the Petition Date whether or not such right of payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

*"Creditor"* shall mean any person or entity that has a Claim against the Debtor.

*"Debt"* shall mean a liability on the Claim.

*"Debtor"* or *"TEI"* means the Debtor and the plan proponent herein.

*"Petition Date"* shall mean the date on which TEI filed its Chapter 11 petition with the Court, March 7, 2018.

*"Effective date"* means 30 days after the date that the order confirming the plan is final and non-appealable.

*"Estimated Claim Amount"* means the amount of a Claim estimated pursuant to Article Five of the Plan.

*"Plan"* means this "Chapter 11 Plan of Reorganization" filed by the Debtor with the Court.

*"Confirmation of the Plan"* means the entry by the Court of an Order confirming the Plan in accordance with Chapter 11.

## ARTICLE TWO--CLASSIFICATION AND TREATMENT OF CLAIMS

***Class One-Rolling Hills Bank and Trust ("RHB").*** The Claim filed by this Class asserts that RHB is a fully secured creditor as to TEI's real estate, equipment, vehicles, crops and livestock. This Claim consists of five (5) loans that were cross-collateralized. These loan obligations will be combined into a single payment. The Claim of this Class is subject to objections by TEI. The amount of its Claim will be

estimated by the Court at the hearing on Confirmation of the Plan as more fully described in Article Five of the Plan. The Estimated Claim Amount will be paid annually with 7.5% interest accruing thereon. The first annual payment on the Estimated Claim Amount will be paid one (1) year after the Effective Date based on a 30 year amortization. However, the annual payment of the Estimated Claim Amount will be increased by the $71,413.20 upon the completion of the Plan payments to Class Five. The payment to this Class will be further adjusted to reflect the amount, if any, TEI owes to this Class as a result of the future litigation against RHB.

This Creditor will retain its lien on all of its collateral. However, its lien against the existing livestock and their offspring will be subordinated to the line of credit loan provided by Global Services, LLC. So long as any Plan payments required to be paid to this Creditor are not in default, RHB's name will not appear as a payee on any checks for the sale of TEI's livestock. However, TEI will provide RHB copies of all cattle sales proceed checks while the Plan is not in default.

TEI will maintain full property and casualty insurance coverage on its insurable assets with RHB listed as a payee on said coverage so long as there is any amount owing to RHB. TEI shall continue to pay all taxes assessed or asserted against its property and will provide proof of such payment to RHB upon written request. RHB may inspect its collateral twice a year upon reasonable advance written notice to TEI (or its successor.) TEI shall maintain, care for and repair its property. This Creditor is impaired.

***Class Two-Petsch Farms, LLC and Petsch Ranch, Inc.*** This Class has filed two secured Claims totaling $263,881.82 (Petsch Farms, LLC) and Petsch Ranch, Inc. has

filed a secured Claim for $212,215.44, all of which are all based on statutory agister's liens. This Class will be treated as secured in the amount of $368,938.25. The remainder of the Claims in this Class will be paid in Class Five. Class Two will be fully paid upon the Effective Date. This Class is impaired.

***Class Three-Deere & Company d/b/a John Deere Financial.*** This Class is paid as a fully secured Creditor based on its purchase money security interest in a John Deere Round Baler, Model 567. The Claim is for $6,650.31 plus accruing interest. This Class is anticipated to be fully satisfied by the payment of $6,752.96 in accordance with the Court's "Order Approving Motion for Sale of Personal Property Free and Clear of Liens" entered on July 22, 2019. Said payment should be tendered to this Creditor prior to the hearing on the Confirmation of Plan. This Class is impaired.

***Class Four-Farm Credit Services of America, PCA.*** This Class is secured by a John Deere 6130D Tractor, a John Deere 6150M Tractor, a Frontier Bale Fork and John Deere H 360 Loader & Attachments. This Claim is for $118,911.07 plus accruing interest. This Class is anticipated to be full satisfied by the payment of $108,247.04 in accordance with the Court's "Order Approving Motion for Sale of Personal Property Free and Clear of Liens" entered on July 22, 2019. Said payment should be tendered to this Creditor prior to the hearing on the Confirmation of Plan. This Class is impaired.

***Class Five-Unsecured Creditors.*** This Class consists, at this point in time, of R Mill Iron Land and Cattle Ranch, Jorgensen Land & Cattle Partnership, Key Bar Ranch and Petsch Farms, Inc. ($107,159.01) for a total of $357,066.01. This Class will be paid in full over five years with no interest with the first payment to this Class in the amount

of $71,413.20 due on the Effective Date, and the remaining four annual payments of $71,413.20 each will be paid proportional to the Claim amounts on March 1st of each succeeding year. The claim of Stanetta Twiford in the amount of $362,000.00 will receive no payment under the Plan. This Class is impaired.

*Class Six-Ownership Interest.* This Class consists of TEI's four shareholders who shall receive no payment hereunder. Until all payments are made under the Plan, this Class shall receive no dividends.

### ARTICLE THREE--ADMINISTRATIVE EXPENSES-NON CLASSIFIED CLAIMS

*Administrative Claims.* The only known administrative claimants consist of TEI's attorney, Stephen R. Winship, and litigation counsel, C. M. Aron, and the U.S. Trustee for the quarterly fees incurred until Confirmation of the Plan. TEI's counsel estimates that his fees will be approximately $25,000.00[1]. These Claims will be paid on the Effective Date or when approved by the Bankruptcy Court, whichever date is later.

### ARTICLE FOUR--EXECUTION AND IMPLEMENTATION OF THE PLAN

After approval and confirmation of the Plan, TEI proposes to retain all undistributed property (including the causes of action against RHB), which will vest in TEI along with all after acquired property and proceeds thereof.

Upon and subject to Confirmation of the Plan, John Twiford ("Twiford") will sell to TEI 434 head of heifers and their current offspring of approximate 384 calves

---

[1] There is currently pending a fee application filed on June 10, 2019 by TEI's counsel in the amount of $34,541.85.

("Cattle") for the sum of $738,000.00 ("Purchase Price"), which will accrue interest at the rate of 6%, and will be paid to Twiford in annual installments of $132,201.84 beginning March 1, 2020 and continuing on March 1 of each subsequent years, until fully paid. TEI may prepay this amount at any time without penalty. Until the Purchase Price is fully paid, the Cattle and their offspring will continue to be owned by Twiford and remain his property. Twiford warrants that the title of the Cattle will be free and clear as of at least the date the first payment herewith is due, and will remain so while in his effect.

If the Confirmation of the Plan has not occurred by October 31, 2019, TEI may, at its election, retain 100 head of the 384 calves as compensation for the care and management of the Cattle for most of 2019. If Twiford is not able to provide ownership of the Cattle and offspring as required above, TEI will file its agister's lien against the Cattle and offspring for the value of the services and out of pocket expenses incurred by TEI for the uncompensated care and management of the Cattle and offspring.

As shown by Exhibit 2, attached hereto, Forbes Global Services, LLC has committed to provide a line of credit up to $1 million on the Effective Date. (This line of credit will bear interest at a variable rate beginning at 5% per annum). This line of credit will be secured by a first position lien on TEI's cattle. TEI will use this line of credit as needed to supplement its operational budget and/or to meet its obligations under the Plan.

TEI will be the disbursing agent and shall be responsible for all obligations under the Plan. The creditors agree to execute all ordinary and necessary documents connected with the effectuation of the Plan including lien and U.C.C. releases.

Any objections to claims not already filed shall be filed by the reorganized TEI or any other party no later than 60 days from the Effective Date of the Plan.

Confirmation of this Plan shall bind all Creditors and TEI, and in accordance with the provisions of 11 U.S.C. § 1141 shall discharge TEI of all debts incurred prior to confirmation, and TEI shall be bound only by the terms of the confirmed plan above and any documents executed to effectuate its terms thereafter and the creditors treated under this Plan shall be limited to their remedies set forth in the Plan and any other documents executed to effectuate its terms.

## ARTICLE FIVE--CLAIMS ESTIMATION

TEI has filed objections to the proof of claim of RHB filed in the amount of $5,797,103.29 and its request for payment of an additional $681,239.60 (plus $900 per day since May 15, 2019) under 11 U.S.C. § 506(b). The primary basis for the objection to RHB's proof of claim derives from the lender liability prepetition causes of action recommended by TEI's special counsel.[2] TEI (or its assignee) will file suit along with its shareholders against RHB in the forum in the United States District Court for the District of Wyoming after the Effective Date. In order to expeditiously effectuate distributions under the Plan and to establish RHB's voting rights as to the Plan, RHB's claims shall be estimated by the Court pursuant to 11 U.S.C. § 502(c) and Fed. R. Bankr. P. 3018(a) as part of the confirmation of the Plan. The Court shall retain jurisdiction to determine the Estimated Claim Amount, including during the litigation of any objection to these

---

[2]. See "Supplement to Objection to Claim No. 8" [D.E. 555].

7 | Page

disputed claims or during the pendency of any appeal relating to such objection. The Estimated Claim Amount shall constitute a maximum limitation on RHB's claim for all purposes under this Plan (including for purposes of Plan distributions).

## ARTICLE SIX--DEBTOR'S INTERESTS

Immediately upon confirmation, all of the property of the estate shall revest in TEI, free and clear of all creditors, liens and interests except as especially provided for herein, along with any and all rights of the Debtor-in-Possession that may be necessary or convenient for TEI to utilize to effectuate the terms of the Plan.

## ARTICLE SEVEN--THIRD PARTY RELEASE

The Confirmation of the Plan will act as an injunction against the litigation pending in Polk County, Iowa (Case No. LACL140373), which RHB has filed against TEI's officers and directors, which injunction shall remain in place subject to TEI not being in default under the payments required under Class One above. Upon the full payment of RHB's Claim as treated in Class One above, the Iowa litigation will be dismissed with prejudice, and any claims by RHB against TEI's officers, directors, and shareholders arising from or related to the debts treated in Class One will be fully released.

## ARTICLE EIGHT--POSTCONFIRMATION MODIFICATION-DEFAULT

The reorganized TEI may convert to Chapter 7 if the TEI determines that the need for continued operation under Chapter 11 is no longer beneficial to the creditors.

Prior to taking action to repossess collateral or collect a claim from the reorganized TEI in any manner, the Creditor(s) shall send a written notice by certified mail to the reorganized TEI 15 days prior to taking action. TEI shall have a 15 day cure period from the receipt of the written notice of default. Should TEI fail to timely cure said default, the Creditor(s) may enforce its rights in the appropriate court.

### ARTICLE NINE--JURISDICTION OF THE COURT

Following Confirmation the Bankruptcy Court shall retain jurisdiction to:

1. Hear any dispute concerning the Plan or Claims or defaults arising under the Plan including Claim estimation.

2. To enter orders necessary or appropriate to carry out the provisions of the Plan, including the correction or curing of a defect, omission or inconsistency in the Plan necessary to carry out the overall intent of the Plan.

3. To adjudicate Claim objections.

4. To adjudicate a Claim arising from the rejection of an executory contract.

5. To hear and determine all fee applications for professionals retained by the estate or secured Creditors.

6. To enforce the Plan and orders previously entered by the court.

7. To modify the Plan as permitted by the Bankruptcy Court.

**DATED** this 23rd day of July, 2019.

TWIFORD ENTERPRISES, INC.

By: _____
Jack Twiford, Secretary

By: _____
Stephen R. Winship
TEI's Counsel

### INCOME AND EXPENSE PROJECTIONS FOR FIRST FIVE YEARS OF PLAN

| Projected Annual Income | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|
| Sale of Livestock | $ 1,175,000.00 [1] | $ 1,454,194.00 | $ 1,454,194.00 | $ 1,454,194.00 | $ 1,454,194.00 |
| Federal Disaster Relief | $ 48,000.00 | $ - | $ - | $ - | $ - |
| Bank Account Balance | $ 10,000.00 [2] | $ 358,969.00 | $ 758,967.96 | $ 1,173,966.92 | $ 1,588,965.88 |
| Line of Credit | | $ 200,000.00 [3] | | | |
| Total | $ 1,233,000.00 | $ 2,013,163.00 | $ 2,213,161.96 | $ 2,628,160.92 | $ 3,043,159.88 |
| **Expenses** | | | | | |
| Labor | $ 46,000.00 | $ 135,000.00 | $ 135,000.00 | $ 135,000.00 | $ 135,000.00 |
| Equiment Repairs | $ 12,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 |
| Rent/Leases | $ 180,000.00 | $ 332,000.00 | $ 332,000.00 | $ 332,000.00 | $ 332,000.00 |
| Supplies | $ 10,000.00 | $ 32,000.00 | $ 32,000.00 | $ 32,000.00 | $ 32,000.00 |
| Livestock Expenses | | $ 68,000.00 | $ 68,000.00 | $ 68,000.00 | $ 68,000.00 |
| Gas/Fuel/Oil | $ 3,000.00 | $ 30,000.00 | $ 30,000.00 | $ 30,000.00 | $ 30,000.00 |
| Taxes-R.E. | | $ 5,900.00 | $ 5,900.00 | $ 5,900.00 | $ 5,900.00 |
| Insurance | $ 4,500.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 |
| Vet & Med | $ 14,500.00 | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 |
| Utilities | $ 10,000.00 | $ 36,000.00 | $ 36,000.00 | $ 36,000.00 | $ 36,000.00 |
| Misc. Expenses | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 |
| Feedlot | $ 103,680.00 | $ 103,680.00 | $ 103,680.00 | $ 103,680.00 | $ 103,680.00 |
| Post-Petition Line of Credit | | $ 210,000.00 [3] | | | |
| Post-Petition Livestock Contract | | $ 132,201.84 | $ 132,201.84 | $ 132,201.84 | $ 132,201.84 |
| Legal Fees | $ 30,000.00 | $ 5,000.00 | | | |
| Total | $ 433,680.00 | $ 1,182,781.84 | $ 967,781.84 | $ 967,781.84 | $ 967,781.84 |
| **Net Income** | $ 799,320.00 | $ 830,381.16 | $ 1,245,380.12 | $ 1,660,379.08 | $ 2,075,378.04 |
| **Total Plan Payment** | $ 440,351.00 | $ 71,413.20 [4] | $ 71,413.20 [4] | $ 71,413.20 [4] | $ 71,413.20 [4] |
| **Carryover for Following Year** | $ 358,969.00 | $ 758,967.96 | $ 1,173,966.92 | $ 1,588,965.88 | $ 2,003,964.84 |

[1] This does not include any livestock sales occuring January-August 2019
[2] Anticipated remaining cash collateral funds as of September 2019
[3] This amount will be adjusted in 2020 and subsequent years depending on the Court's estimation of RHB's claim
[4] The Plan payment will be adjusted depending on the Court's estimation of RHB's claim



Exhibit __I__

# Dru M. Guthrie, Esq.
PO Box 50616
Idaho Falls, Idaho 83405-0616
(208) 200-2586 voice - (208) 524-4699 fax
guthrielawoffice@gmail.com

July 17, 2019

Jack Twiford
Twiford Enterprises, Inc.
642 Horseshoe Creek Road
Glendo, WY 82213

Re:   Twiford Enterprises, Inc.
      Chapter 11 Bankruptcy
      Case No. 18-20120

Dear Mr. Twiford:

I represent Forbes Global Services, LLC in connection with its negotiations for a future loan facility(ies) to Twiford Enterprises, Inc. ("TEI"). My client is willing to lend to TEI the sum of $1,000,000.00 in the form of a line of credit bearing interest at a variable rate beginning at 5% per annum, which will be renewable on April 1st of each year after inception. This loan is subject to the satisfaction of the following conditions:

1. TEI must obtain confirmation of a Chapter 11 plan of reorganization that it has proposed.

2. My client will have a first lien position on TEI's cattle herd.

3. Until the loan is fully paid, TEI's cattle herd will be maintained at a market value of at least $1,500,000.00.

4. The parties will execute a loan agreement that memorializes all terms necessary to effectuate the purpose and intent expressed herein including, but not limited to such supporting documents as an executed security agreement

You are welcome to contact me at your convenience to discuss this matter.

Very truly yours,

Dru M. Guthrie, Esq.
General Counsel

Exhibit 2